UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **CYNTHIA KEELER**, | Civil Case No. 3:12-CV-00101-KI |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| **PATRICIA MARKESINO; JULIA WILLIS; DONNA CAIN; KAY CARNEGIE; CHERYL COSGROVE; LINDA MILL; BENJAMIN SOUEDE; MAX TENSCHER; REBECCA UHERBELAU; CHRISTA LEE; NISHA SEXTON; NIKKI BLOOMQUIST; SUZI SCHULTS; KATE MANELIS; DOES 1-10; RELIANT BEHAVIORAL HEALTH EMPLOYEES; RELIANT BEHAVIOR HEALTH**, an Oregon Limited Liability Company also known as R.B.H. Centers, LLC, | |
| Defendants. | |

Page 1 - OPINION AND ORDER

Michelle R. Burrows
22586 SW Park Street
Sherwood, Oregon  97140

    Attorney for Plaintiff

Ellen F. Rosenblum
Attorney General
Steven M. Lippold
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon  97301-4096

    Attorneys for Defendants

KING, Judge:

The Nurse Monitoring Program began to supervise plaintiff Cynthia Keeler, a registered nurse, after a Justice of the Peace reported her citation for possession of less than an ounce of marijuana to the Oregon State Board of Nursing ("Board").  A few years after Keeler's monitoring began, the Oregon Legislature enacted statutes to make the monitoring of health care professionals more uniform.  The new statutes caused the Board to contract with Reliant Behavioral Health ("Reliant") as the new facilitator for the Nurse Monitoring Program.  Keeler's claims arose during the transition to Reliant.  She brings her constitutional and tort claims against the individual members of the Board, some staff of the Board, and Reliant.  Before the court is the State Defendants' Motion for Summary Judgment [50] based on a release Keeler signed in 2011.  I deny the motion for the reasons below.

## FACTS

There is no need for a detailed explanation of what led up to Keeler's dispute with the Board and Reliant. Suffice it to say Keeler retained counsel when she believed the Board violated her rights during the Nurse Monitoring Program's transition to Reliant as its facilitator. The Board, through counsel, proposed a global resolution by means of a stipulated settlement. Keeler and the Board President, on behalf of the Board, executed the settlement in late January 2011. The settlement agreement states, in relevant part:

> 5. The Board's investigation and communication with Licensee have led to the following stipulated resolution:
>
>   A. Licensee's Interim Consent Order is vacated;
>
>   B. The Board's monitoring relationship with Licensee is successfully concluded; and
>
>   C. The Board's investigation is closed.
>
> 6. This stipulation resolves all issues and claims between the Board and the Licensee whether federal or state, judicial or administrative.

Mem. in Supp. of Mot. for Summ. J. Ex. 13, at 1.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine dispute of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains a fact dispute to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the

Page 3 - OPINION AND ORDER

court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

## DISCUSSION

The State Defendants, all members of the Board or its staff, argue Keeler's claims against them are barred entirely because she released the claims when she executed the settlement agreement. They contend Keeler presented all of her claims to the Board in a letter from her counsel in early January. Because Keeler could only bring her federal civil rights claims against the individual members of the Board, and not the Board as an entity, the State Defendants argue Keeler must have released all of these claims in the settlement.

Keeler simply argues the settlement agreement only binds her and the State of Oregon, and thus does not release the individual State Defendants. She contends her decision to execute the settlement agreement was based in part on this distinction. According to Keeler, if the State wanted to release the individuals, it could have worded the agreement to release the Board and its members, agents, assigns, or employees. Because the agreement is not ambiguous, Keeler argues the court should ignore any extrinsic evidence of what counsel for both sides meant to include in the release–the words of the release control.

To interpret a contractual provision, the court first "examines the text of the disputed provision, in the context of the document as a whole." Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997). "If the provision is clear, the analysis ends." Id.

The settlement agreement is brief, only two pages, and the release language quoted above is unambiguous. Keeler only released her claims against the Board and not any individuals

Page 4 - OPINION AND ORDER

associated with the Board. The agreement contains no definition broadening the meaning of the term "Board" in the document. Because there is no ambiguity, I have no need to consider extrinsic evidence. Thus, I conclude Keeler did not release her claims against the State Defendants when she executed the settlement agreement.

## CONCLUSION

The State Defendants' Motion for Summary Judgment [50] is denied.

IT IS SO ORDERED.

Dated this ____6th____ day of March, 2013.

                                                   /s/ Garr M. King
                                                   Garr M. King
                                                   United States District Judge